MONA J. LACARRUBBA, Plaintiff v. MICHAEL LACARRUBBA, Defendant

No. COA09-612

(Filed 16 February 2010)

## Child Support, Custody, and Visitation— jurisdiction—foreign order—modification

The trial court lacked jurisdiction to modify a foreign child support order issued in New York and later registered in Florida. Defendant father cited no authority for his contention that the court's jurisdiction over the uncontested registration of a child support order that was registered for enforcement only gave it jurisdiction to modify the order.

Appeal by Plaintiff from order entered 13 November 2008 by Judge Paul M. Quinn in Carteret County District Court. Heard in the Court of Appeals 17 November 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Lisa Bradley Dawson, for the State.*

*Michael Lincoln, P.A., for Defendant-Appellee.*

BEASLEY, Judge.

Plaintiff (State of North Carolina, on behalf of Mona Lacarrubba) appeals from orders holding that the trial court had jurisdiction to modify a foreign child support order, and modifying Defendant's (Michael Lacarrubba) child support obligations under the order. We reverse.

The parties were married in 1984 and divorced in 1995. Two children were born of the marriage: Nicole, born 31 May 1985; and Marissa, born 17 March 1990. On 21 April 1995 a divorce decree was entered in Suffolk County, New York, obligating Defendant to pay $1040 per month in child support. At the time the divorce decree was entered, the parties lived in New York. In 1999 Plaintiff moved to Florida with both children, and registered the support judgment in Lee County, Florida. In 2001, the parties' older child, Nicole, moved from Florida to New York and began living with Defendant. Thereafter, Defendant unilaterally reduced his child support payments by half, paying only $520 a month.

In 2006 Defendant and Nicole moved to North Carolina. On 26 September 2007 Plaintiff filed a Notice of Registration of Foreign

Support Order, specifically registering the order "for enforcement only," and seeking more than $30,000 in past due child support payments. The order was registered in Carteret County North Carolina on 26 September 2007. On 26 October 2007 Defendant filed a request for a hearing to contest the validity and enforcement of the order. However, on 6 March 2008 Defendant consented to entry of an order confirming registration of the child support order. The order stated that the "issue of the arrears owed under the terms of the child support order is held open and is to be addressed at a later time."

On 24 April 2008 Defendant filed a Motion to Contest and Reduce Arrearages. Defendant's motion conceded that the order was registered in Lee County, Florida, but asserted that North Carolina and Florida had "concurrent jurisdiction" to modify the amount of arrearages. Following a hearing conducted on 15 May 2008 Judge Paul M. Quinn entered an order on 13 November 2008, modifying Defendant's child support obligation and reducing the amount of arrearages he owed. Also on 13 November 2008, Judge Peter Mack entered an order requiring Defendant to pay specified monthly amounts in child support and arrearages, and finding that the trial court had jurisdiction to modify the child support order. From these orders, Plaintiff appeals.

Plaintiff argues that the trial court lacked authority to modify the foreign order for child support. We agree, and find this dispositive of Plaintiff's appeal.

"Because of the complexity and multiplicity of pertinent state and federal child support legislation, a summary of the law regarding review of multi-state child support orders is critical in order to define the proper analytical framework for cases such as this one." *New Hanover Cty. ex rel. Mannthey v. Kilbourne*, 157 N.C. App. 239, 241, 578 S.E.2d 610, 612 (2003). *Kilbourne* noted that:

[f]rom 1951 until 1996, URESA provided the procedural mechanism in North Carolina for establishing, modifying, and enforcing child support across state lines. Under URESA, a state was not bound to adopt a child support order entered in another state. Instead, "a state had jurisdiction to establish, vacate, or modify an obligor's support obligation even when that obligation had been created in another jurisdiction." . . . In 1986, in an effort to improve the collection of child support, Congress amended Title IV-D of the Social Security Act ("the Bradley amendment").

(quoting *Welsher v. Rager*, 127 N.C. App. 521, 524, 491 S.E.2d 661, 663 (1997)).

As a general rule, the Uniform Interstate Family Support Act (UIFSA) "requires that a support order be interpreted according to the law of the state in which it is issued." *Welsher*, 127 N.C. App. at 524, 491 S.E.2d at 663.

Together, UIFSA and the Full Faith and Credit for Child Support Orders Act (FFCCSOA), 28 U.S.C. § 1738B (2007), have severely limited the circumstances under which a state may modify a child support order issued by another state. FFCCSOA provides in pertinent part that:

(a) The appropriate authorities of each State—

(1) shall enforce according to its terms a child support order made consistently with this section by a court of another State; and

(2) shall not seek or make a modification of such an order except in accordance with subsections (e), (f), and (I).

. . . .

(e) A court of a State may modify a child support order issued by a court of another State if

(1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and

(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or (B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.

. . . .

(i) If there is no individual contestant or child residing in the issuing State, the party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another State shall register that order in a State with jurisdiction over the nonmovant for the purpose of modification.

28 U.S.C. § 1738B9(a), (e), and (i) (emphasis added).

Further:

"Under the supremacy clause of the United States Constitution, the provisions of FFCCSOA are binding on all states and supersede any inconsistent provisions of state law, including any inconsistent provisions of uniform state laws[.] . . . Modification of a valid order is permitted only when: (1) all parties have consented to the jurisdiction of the forum state to modify the order; or (2) neither the child nor any of the parties remains in the issuing state <u>and the forum state has personal jurisdiction over the parties</u>.

*State ex rel. Harnes v. Lawrence*, 140 N.C. App. 707, 710, 538 S.E.2d 223, 226 (2000) (quoting *Kelly v. Otte*, 123 N.C. App. 585, 589, 474 S.E.2d 131, 134 (1996); and citing *Welsher*, 127 N.C. App. at 528, 491 S.E.2d at 665) (emphasis added). The relevant provisions of N.C. Gen. Stat. § Chapter 52C echo the limitations expressed in FFCCSOA. The official comment to these statutes further articulates the legislature's intent to restrict the authority of a state court to modify either ongoing child support payments or arrearages due under a foreign child support order. In *Tepper v. Hoch*, 140 N.C. App. 354, 359, n.1, 536 S.E.2d 654, 658, n.1 (2000), this Court noted that:

The official comment to [§ 52C-6-608] provides the confirmation "validates both the terms of the order and the asserted arrearages." . . . This comment correctly reflects the intent of the legislature[.] . . . 1. Although the commentary is not binding authority, it must be given "substantial weight" in this Court's "efforts to comprehend legislative intent."

(quoting *State v. Hosey*, 318 N.C. 330, 337-38, n.2, 348 S.E.2d 805, 810, n.2 (1986). In this regard, we note that the the Official Comment to N.C. Gen. Stat. § 52C-2-205 (2009) states that

the issuing tribunal retains continuing, exclusive jurisdiction over a child support order, . . . [a]s long as one of the individual parties or the child continues to reside in the issuing State[,] . . . which in practical terms means that it may modify its order. . . . [I]f all the relevant persons . . . have permanently left the issuing State, the issuing State no longer has . . . jurisdiction to modify. . . . [but] the original order of the issuing tribunal remains valid and enforceable. . . . The original order remains in effect until it is properly modified in accordance with the narrow terms of [N.C. Gen. Stat. § 52C-6-] 609-612[.]

N.C. Gen. Stat. § 52C-6-603(c) (2009), expressly states:

(c) Except as otherwise provided in this Article, a tribunal of this State shall recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction.

The Official Comment to § 52C-6-603 notes that:

. . . An interstate support order is to be enforced . . . as if it had been issued by a tribunal of the registering State, although it remains an order of the issuing State. Conceptually, the responding State is enforcing the· order of another State, not its own order.

Subsection (c) mandates enforcement of the registered order. . . . This is at sharp variance with the common interpretation of [former] RURESA § 40, which . . . was generally construed as converting the foreign order into an order of the registering State. Once the registering court concluded that it was enforcing its own order, the next logical step was to modify the order as the court deemed appropriate. . . . UIFSA mandates an end to this process, except as modification is authorized in this article.

N.C. Gen. Stat. § 52C-6-611 (2009) provides in relevant part that:

(a) After a child support order issued in another state has been registered in this State, . . . this State may modify that order only if G.S. 52C-6-613 does not apply and after notice and hearing it finds that: (1) The following requirements are met:

a. The child, the individual obligee, and the obligor do not reside in the issuing state;

b. A petitioner who is a nonresident of this State seeks modification; and

c. The respondent is subject to the personal jurisdiction of the tribunal of this State[.]

The Official Comment to § 52C-6-611 makes it clear that this statute bars North Carolina from modifying the order in the present case:

Under UIFSA, registration is subdivided into . . . registration for enforcement, for modification, or both. UIFSA is based on recognizing the truism that when a foreign support order is registered for enforcement, the rights of the parties affected have been previously litigated. . . . Under UIFSA a tribunal may modify an exist-

ing child support order of another State only if certain quite limited conditions are met. . . . [O]ne of the restricted fact situations described in subsection (a) must be present. . . . UIFSA establishes a set of "bright line" rules which must be met before a tribunal may modify an existing child support order. . . .

In the overwhelming majority of cases, the party seeking modification must seek that relief in a new forum, almost invariably the State of residence of the other party. This rule applies to either obligor or obligee, depending on which of those parties seeks to modify. . . . original issuing State for a document to confirm the fact that none of the relevant persons still lives there. . . . [T]he obligee may seek modification in the obligor's State of residence, or . . . the obligor may seek a modification in the obligee's State of residence. This restriction attempts to . . . prevent[] a litigant from choosing to seek modification in a local tribunal to the marked disadvantage of the other party.

"G.S. [§] 52C-6-607(a)(5) allows defendant to assert defenses under North Carolina law to the enforcement procedures sought but does not allow defendant to assert equitable defenses under North Carolina law to the amount of arrears." *State ex rel. George v. Bray*, 130 N.C. App. 552, 558, 503 S.E.2d 686, 691 (1998). Thus, "[i]f [D]efendant wishes to pursue his equitable defenses he must do so in [Florida]." *Id.* at 559, 503 S.E.2d at 691.

"In addition, under the FFCCSOA, the trial court did not have the authority to modify the Florida child support order by permitting registration of a portion of the order, the ongoing monthly child support, and denying registration of the arrears." *State ex rel. Lively v. Berry*, 187 N.C. App. 459, 464, 653 S.E.2d 192, 195 (2007).

In the instant case, it is undisputed that: (1) the child support order was issued in New York, and later registered in Florida; (2) Plaintiff registered the child support order in North Carolina for enforcement only; (3) North Carolina did not have personal jurisdiction over Plaintiff, who lived in Florida; and (4) the parties did not consent to North Carolina's jurisdiction to modify the child support order. We conclude that the trial court lacked authority to modify the order or reduce arrearages. We reject Defendant's arguments to the contrary.

Defendant argues that the trial court had the jurisdiction to modify the child support order because he "timely filed his objection to

registration" of the order, in a motion that asserted reasons "suggest[ing] that the Defendant was entitled to a credit for a portion or all of the child support arrearage." Defendant cites no authority for the proposition that his filing of a request to challenge registration and enforcement of the order automatically confers subject matter jurisdiction upon the trial court to modify the order. In addition, although Defendant filed this motion, he admits that when the case was heard he consented to registration of the order.

The order confirming registration of the child support order states that the order had been registered with the Carteret County Clerk of Superior Court on 26 September 2007, and that the registration "is hereby confirmed in the State of North Carolina." The registration thus confirmed specifically limits its scope to "enforcement only." Defendant fails to articulate any theory upon which this registration was transformed into registration for the purpose of enforcement and modification. Defendant asserts that Plaintiff "misconstrues the language" of the order, but fails to identify which part of the order has been "misconstrued." Defendant also asserts that, because the order recites that the trial court "has personal and subject matter jurisdiction over the parties," the order confirming registration of the child support order "thereby g[ave] North Carolina full and unfettered jurisdiction." There is no dispute that the trial court had jurisdiction over the matter before it, which was confirmation of the registration of a foreign support order. However, Defendant cites no authority for his contention that the court's jurisdiction over the uncontested registration of a child support order that was registered <u>for enforcement only</u> gave it jurisdiction to modify the order.

Defendant cites *Kelly v. Otte*, 123 N.C. App. 585, 590, 474 S.E.2d 131, 134, for his contention that "[o]nce the New York Order was registered in North Carolina pursuant to the 6 March 2008 Order, it essentially became the same as any other child support order issued by a Court of this State." However, *Kelly* was decided under former "Chapter 52A of the North Carolina General Statutes, North Carolina's version of URESA, [which] was repealed by Session Laws 1995, effective 1 January 1996." Accordingly, *Kelly* does not govern the instant case. Indeed, in *Welsher*, 127 N.C. App. at 524, 491 S.E.2d at 663, this Court explained:

[t[he Uniform Reciprocal Enforcement of Support Act (URESA) was repealed by the North Carolina General Assembly effective 1 January 1996. In its place, the legislature adopted UIFSA in

LACARRUBBA v. LACARRUBBA

[202 N.C. App. 532 (2010)]

Chapter 52C of our General Statutes. Both URESA and UIFSA were promulgated and intended to be used as procedural mechanisms for the establishment, modification, and enforcement of child and spousal support obligations. . . . Under URESA, a state had jurisdiction to establish, vacate, or modify an obligor's support obligation even when that obligation had been created in another jurisdiction. . . . UIFSA was designed to correct this problem.

Defendant also contends that "the State has previously taken the position that no party should be required to pay child support twice simply because no motion to modify was timely filed, citing *Transylvania County DSS v. Connolly*, 115 N.C. App. 34, 443 S.E.2d 892 (1994). However, as with *Kelly*, Defendant cites a case decided under statutes long since repealed.

Defendant correctly notes that New York "lost modification jurisdiction" when neither the parties nor the children remained in New York. However, Defendant fails to cite any authority supporting his contention that registration of a child support order that Plaintiff had registered in <u>Florida</u> gave North Carolina jurisdiction to modify the order.

For the reasons discussed above, we conclude that the trial court lacked jurisdiction to modify the child support order, and that its order must be

Reversed.

Judges WYNN and CALABRIA concur.